| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | Steven | R. | Flint |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Southern District of Ohio

Case number 3:22-bk-31741
(if known)

## Official Form 427
## Cover Sheet for Reaffirmation Agreement                    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

| | |
|---|---|
| **1. Who is the creditor?** | Wright-Patt Credit Union, Inc.<br>Name of the creditor |
| **2. How much is the debt?** | On the date that the bankruptcy case filed     $82,459.04 |
| | To be paid under the reaffirmation agreement    $82,459.04 |
| | $*801.69 per month for 258 months pursuant to the original Note, Mortgage, and any subsequent written mutual agreement.  *This amount may change as amounts collected for escrow change. |
| **3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)** | Before the bankruptcy case was filed 4.625%<br><br>Under the reaffirmation agreement  4.625%  ☒ Fixed rate<br>                                                        ☐ Adjustable rate |
| **4. Does collateral secure the debt?** | ☐ No<br>☒ Yes.  Describe the collateral. 611 Beatrice Drive, Dayton, OH  45404<br><br>        Current market value    $86,570.00 (Per Debtor's Schedules) |
| **5. Does the creditor assert that the debt is nondischargeable?** | ☒ No<br>☐ Yes.  Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable. |

| 6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts. | Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement |
|---|---|---|
| | 6a. Combined monthly income from line 12 of Schedule I  $ 1,800.00 | 6e. Monthly income from all sources after payroll deductions  $ 1,800.00 |
| | 6b. Monthly expenses from line 22c of Schedule J  – $ 1,800.00 | 6f. Monthly expenses  – $ 1800.00 |
| | 6c. Monthly payments on all reaffirmed debts not listed on Schedule J  – $ 1,800.00 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses  – $ 1,800.00 |
| | 6d. Scheduled net monthly income Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets.  $ 0.00 | 6h. Present net monthly income Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets.  $ 0.00 |

Debtor 1 ___Steven_____ ___R._____ ___Flint_____   Case number (if known) 3:22-bk-31741
        First Name              Middle Name              Last Name

| 7. Are the income amounts on lines 6a and 6e different? | ☒ No ☐ Yes. Explain why they are different and complete line 10. _____ _____ |
|---|---|
| 8. Are the expense amounts on lines 6b and 6f different? | ☒ No ☐ Yes. Explain why they are different and complete line 10. _____ _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☒ No ☐ Yes.  A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. _____ _____ _____ |
| 10. Debtor's certification about lines 7-9

If any answer on lines 7-9 is *Yes*, the debtor must sign here.

If all the answers on lines 7-9 are *No*, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.

X _~~signature~~_____   X _____
   Signature of Debtor 1                Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No ☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement? ☐ No ☒ Yes |

## Part 2: Sign Here

| Whoever fills out this form must sign here. | I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

X _/s/Edward J. Boll III_____   Date ___01/17/2023___
   Signature                              MM / DD/ YYYY

Edward J. Boll III
Printed Name

Check one:

☐ Debtor or Debtor's Attorney

☒ Creditor or Creditor's Attorney |
|---|---|

Form 2400A (12/15)

<table>
<tr><td>Check one.<br>☐ <b>Presumption of Undue Hardship</b><br>☒ <b>No Presumption of Undue Hardship</b><br><i>See Debtor's Statement in Support of Reaffirmation,<br>Part II below, to determine which box to check.</i></td></tr>
</table>

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN  District of OHIO

In re <u>Steven R. Flint,</u>                                    Case No. <u>3:22-bk-31741</u>
                        *Debtor*

                                                                Chapter <u>7</u>

## REAFFIRMATION DOCUMENTS

### Name of Creditor: <u>WRIGHT-PATT CREDIT UNION, INC.</u>

☒ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A.  Brief description of the original agreement being reaffirmed: <u>Promissory Note for Real Property</u>
                                                        *For example, auto loan*

### B. *AMOUNT REAFFIRMED*: $ <u>82,459.04</u>

      The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before <u>December 22, 2022</u>, which is the date of the Disclosure Statement portion of this form (Part V).

      *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C.  The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is <u>4.625%</u>. *See*

    definition of "Annual Percentage Rate" in Part V, Section C below.

    This is a *(check one)* ☒ Fixed rate                    ☐Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒   $801.69* per month for 258 months starting on 01/01/2023 pursuant to the original Note, Mortgage, and any subsequent written mutual agreement. *This amount may change as amounts collected for escrow change.

☐   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E.   Describe the collateral, if any, securing the debt:

      Description:           611 Beatrice Drive, Dayton, OH  45404
      Current Market Value    $86,570.00 (Per Debtor's Schedules)

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral?      $95,000.00

☐ No. What was the amount of the original loan?      $_____

G.  Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 82,459.04 | $82,459.04 |
| Annual Percentage Rate | 4.625% | 4.625% |
| Monthly Payment | $ * 801.69 | $ * 801.69 |

*Pursuant to the original Note, Mortgage, and any subsequent written mutual agreement.  This amount may change as amounts collected for escrow change.

H.   ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A.  Were you represented by an attorney during the course of negotiating this agreement?

      Check one.    ☒ Yes    ☐ No

B.  Is the creditor a credit union?

      Check one.    ☒ Yes    ☐ No

Form 2400A, Reaffirmation Documents

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

   1.   Your present monthly income and expenses are:

       a. Monthly income from all sources after payroll deductions
       (take-home pay plus any other income)                    $    *1,800.00*

       b. Monthly expenses (including all reaffirmed debts except
       this one)                                    $    *995.00*

       c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ *805.00*

       d. Amount of monthly payment required for this reaffirmed debt $ *801.69*

       *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2.   You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

       Check one of the two statements below, if applicable:

       ☐    You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

       ☐    You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

       _____
       _____
       _____

       Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

       ☐    You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents

Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES I

hereby certify that:

(1)    I agree to reaffirm the debt described above.

(2)    Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3)    The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4)    I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5)    I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date ___1/12/23_____    Signature _____
                                                                    *Debtor*

Date _____    Signature _____
                                                                    *Joint Debtor, if any*

### Reaffirmation Agreement Terms Accepted by Creditor:

Creditor   <u>Wright-Patt Credit Union, Inc.</u>         <u>3560 Pentagon Blvd., Beavercreek, OH  45431</u>
                   *Print Name*                                                  *Address*

         <u>Edward J. Boll III</u>                          <u>/s/Edward J. Boll III</u>            <u>01/17/2023</u>
         *Print Name of Representative*                *Signature*                      *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date __1/12/22__    Signature of Debtor's Attorney _Rebecca Bolth_

                          Print Name of Debtor's Attorney _Rebecca Barthelemy Smith_

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1.   **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.   **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.   **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.   **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5.   **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

Form 2400A, Reaffirmation Documents

Page 6

6. **When will this Reaffirmation Agreement be effective?**

a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

Form 2400A, Reaffirmation Documents

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

Loan No. ████████

# NOTE

| May 29, 2014 | Fairborn | Ohio |
|---|---|---|
| [Date] | [City] | [State] |

611 Beatrice Dr, Dayton, OH 45404
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $95,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Wright-Patt Credit Union, Inc.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.625%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2014. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2044, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 986, Newark, NJ 07184-0986 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $488.43.

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such

loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Steven R. Flint                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]

Loan Originator Organization: Wright-Patt Credit Union Inc, NMLSR ID: 510034
Individual Loan Originator's Name: Jeff McGrady, NMLSR ID: 588697

Pay to the order of

_____
Without Recourse
Wright-Patt Credit Union, Inc.

_____
Authorized Agent: Fran Conover
                  Secondary Marketing

Type: MTG
Kind: MORTGAGE
Recorded: 06/05/2014 03:14:34 PM
Fee Amt: $52.00  Page 1 of 5
Montgomery County, OH
Willis E. Blackshear County Recorder
File# ███████████

Loan Originator Organization: Wright-Patt Credit Union Inc, NMLSR ID: 510034
Individual Loan Originator's Name: Jeff McGrady, NMLSR ID: 588697

Return To:

# Hallmark Title

3040 Presidential Dr., Suite 222    *BOX*
Fairborn, Ohio 45324

Loan No.: ███████

# MORTGAGE

## DEFINITIONS:

Words used in multiple sections of this document are defined below and in the Master Mortgage Form (as hereinafter defined).

(A)    "Security Instrument" means this document, which is dated **May 29, 2014** together with all Riders to this document.

(B)    "Borrower" is **Steven R Flint  An Unmarried Man**.  Borrower is the mortgagor under this Security Instrument.

(C)    "Lender" is WRIGHT-PATT CREDIT UNION, INC.  Lender is a corporation organized and existing under the laws of OHIO.  Lender's address is 2455 Executive Park Boulevard, Fairborn, OH 45324.

Mortgage

Page 1 of 5                                      74376MCOH 07/06 Rev. 06/09

(D)      "Note" means the promissory note signed by Borrower and dated **May 29, 2014**. The Note states that Borrower owes Lender   **Ninety Five Thousand   and 00/100ths** Dollars (U.S. **$95,000.00**) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2044**.

(E)      "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F)      "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)      "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider             ☐ Revocable Trust Rider        ☐ Biweekly Payment Rider
☐ 1-4 Family Rider          ☐ Planned Unit Development Rider
☐ Other(s) *[specify]*

## TRANSFER OF RIGHTS IN THE PROPERTY:

This Security Instrument secures to Lender:

(i)      the repayment of the Loan, and all renewals, extensions and modifications of the Note; and

(ii)     the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County.

Parcel ID **I39-00611-0025,0026** which currently has the address of **611 Beatrice Dr, Dayton, OH 45404** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

## MASTER MORTGAGE FORM:

All terms of that certain master mortgage form ("Master Mortgage Form) recorded June 9, 2006 pursuant to Ohio Revised Code Section 5302.15 in the office of the Montgomery County Recorder, Instrument No. MORT 06-052827 0014, O.R., Book                , Page                     by Wright-Patt Credit Union, Inc., are by this reference incorporated as fully as to the same extent as if set forth and contained herein.

Mortgage

**COPY**:

A copy of the Master Mortgage Form has been furnished to the mortgagor prior to the execution of this Security Instrument and mortgagor hereby acknowledges receipt of the same by signing at the end of this instrument.

**CERTAIN OTHER ADVANCES**:

In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, **Montgomery** County, Ohio for recording.  Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrowers should have paid as provided in this Security Instrument, affirm and comply with the provisions of Section 5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (including, but not limited to the Master Mortgage Form) and in any Rider executed by Borrower and recorded with it.  If for any reason the Master Mortgage Form shall not be deemed a part of this Security Instrument, this three (3) page instrument, plus any Rider(s) and attached legal description shall stand by itself as a mortgage document, binding on Borrower(s) for the benefit of Wright-Patt Credit Union, Inc., its successors and assigns.

_____          _____
Steven R. Flint

_____          _____

Mortgage

Page 3 of 5                          74376MCOH 07/06 Rev. 06/09

STATE OF <u>OHIO</u>
COUNTY OF <u>MONTGOMERY</u> , SS:

On this <u>5/29/14</u> , before me a Notary Public in and for said County and State, personally appeared <u>Steven R. Flint, unmarried,</u> the individual(s) who executed the foregoing instrument and acknowledge that he/she/they did examine and read the same and did sign the foregoing instrument, and that the same is his/her/their free act and deed.  IN WITNESS WHEREOF, I have hereunto set my hand and official seal.



Notary Public

My Commission Expires:
State of  Ohio

This instrument was prepared by:

WRIGHT-PATT CREDIT UNION, INC.
2455 EXECUTIVE PARK BOULEVARD
FAIRBORN, OH 45324

PEGGY ANN HALL, Notary Public
In and for the State of Ohio
My Commission Expires Sept. 4, 2017

Mortgage

Page 4 of 5                          74376MCOH 07/06 Rev. 06/09

EXHIBIT A
LEGAL DESCRIPTION OF SUBJECT PROPERTY

The legal description for the property located at 611 Beatrice Dr, Dayton, OH 45404 is as follows:

## EXHIBIT "A"

Situate in the City of Riverside, County of Montgomery, and State of
Ohio and being Lots Numbered FIFTY-FIVE (55) and FIFTY-SIX
(56) Avondale Plat, as recorded in Plat Book P, Page 13 of the plat
records of Montgomery County, Ohio.  (Parcel Nos. I39-00611-0025;
0026)



**myCUmortgage®**
3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

June 9, 2021

STEVEN R FLINT
611 BEATRICE DR
DAYTON, OH 45404

Mortgage Number: ███████
RE: Property Address: 611 BEATRICE DR

Dear Member(s): STEVEN,

We would like to offer you an opportunity to enter into a permanent solution. You have options, but you must act now. We are here to help. If you have questions about the options listed below, **please contact us immediately.**

<u>Can You Resume Your Regular Monthly Mortgage Payment?</u>

Congratulations, you are approved for a payment deferral. This solution brings your mortgage current, prevents foreclosure, and delays repayment of the mortgage payments you missed during your forbearance plan. If your hardship is resolved and you are able to resume making your mortgage payments following your forbearance plan, a payment deferral may be the best option to immediately bring your mortgage current. **Please refer to the enclosed payment deferral agreement for more details on this offer and how to accept it.**

I urge you to contact me at (877) 912-8006 to discuss these options. For your convenience I can also be contacted via email at MemberAssistance@myCUmortgage.com or via fax at (937) 912-8200. Together we can find a plan to bring your loan current and save your home. If I am unavailable, another member of our Member Assistance Team will be happy to assist you as well. Our office hours are Monday through Friday from 8:00 AM to 8:00 PM ET and Saturday from 9:00 AM to 1:00 PM ET.

Sincerely,

*Matthew Covey*
**Matthew Covey NMLS ID 1921915**
Member Assistance



3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

## Payment Deferral Agreement

STEVEN R FLINT
611 BEATRICE DR
DAYTON, OH 45404

June 9, 2021
Mortgage Number ████████

### PAYMENT DEFERRAL AGREEMENT

Dear STEVEN:

Congratulations, you are approved for a payment deferral, which will defer your past-due amounts to bring your mortgage current. This letter describes what a payment deferral is and how it impacts your mortgage.

**To accept this offer, you must sign and return a copy of the payment deferral agreement by 6/30/2021**

### What is a Payment Deferral?

A payment deferral brings your mortgage current and delays repayment of certain past-due monthly principal and interest payments, as well as other amounts we paid on your behalf related to the past-due monthly payments. You will be responsible for paying the past-due amounts upon the maturity date of the mortgage or earlier upon the sale or transfer of the property, refinance of the mortgage loan, or payoff of the interest-bearing unpaid principal balance.

### Terms of the Payment Deferral

As of 7/1/2021, we will
- adjust the due date of your next scheduled monthly payment to bring your mortgage current,
- defer the scheduled repayment of the total past-due amounts to the maturity date of the mortgage or earlier upon the sale or transfer of the property, refinance of the mortgage loan, or payoff of the interest-bearing unpaid principal balance, and
- waive any late charges.

1 ████████



myCUmortgage®
3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

The following table describes the specific terms of your payment deferral.

| | |
|---|---|
| Number of past due principal and interest payments to be deferred | 5 |
| Past-due principal and interest payment amount to be deferred | $2,442.15 |
| Other past-due amounts to be deferred* | $369.66 |
| Total past-due amounts to be deferred** | $2,811.81 |
| Late charges to be waived | $432.72 |

*Includes any amounts we paid on your behalf related to the past-due payments, such as taxes or insurance, as authorized by your mortgage documents.

**Interest will not be charged on the total past-due amounts to be deferred. The payment deferral will not change any other terms of your mortgage.

Once your payment deferral is in effect, you must continue to make your scheduled monthly payment to keep your mortgage current.

The new total monthly payment amount of $783.29.

**To accept this offer, you must sign and return a copy of the payment deferral agreement by 6/30/2021**

Signed _____     Date 6·30·21

STEVEN R FLINT

2



3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

Date: **June 9, 2021**
Loan Number: ▮▮▮▮▮▮▮
Lender: **Fannie Mae**
Borrower:     STEVEN FLINT
Property Address: **611 BEATRICE DR, DAYTON OH 45404**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____      6-30-21
Borrower                                                                                          Date
STEVEN R FLINT

3 ▮▮▮▮▮▮



3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

Date: **June 9, 2021**
Loan Number: ████████████
Lender: **Fannie Mae**
Borrower:    **STEVEN FLINT**
Property Address: **611 BEATRICE DR, DAYTON OH 45404**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of Federal National Mortgage Association (the "Lender") agreeing to process a payment deferral for the referenced loan (the "Loan") to the Borrower, the Borrower agrees if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the payment deferral, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the payment deferral of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____      6·30·21
**Borrower**                                                             Date
**STEVEN FLINT**

4



3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

## QUESTIONS? CONTACT US

**myCUmortgage**
**Phone: 877-912-8006**
**Email Address: memberassistance@mycumortgage.com**

## FREQUENTLY ASKED QUESTIONS

**What other amounts might I owe?**

- There are no processing fees for this payment deferral.
- If there is already a principal forbearance amount that will be due at the maturity of your loan, you will still be responsible for any such amount that remains at the maturity date of the mortgage loan or earlier upon the sale or transfer of the property, refinance of the mortgage loan, or payoff of the interest-bearing unpaid principal balance.

## How will a payment deferral impact my credit?

- The servicer must report the status of the mortgage loan to the credit bureaus in accordance with the Fair Credit Reporting Act, including as amended by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), for borrowers affected by the COVID-19 emergency. If your financial hardship was caused by COVID-19 during the covered period under the CARES Act and you were current on your mortgage before receiving the payment deferral, we will continue to report you as current on your credit report.
- When your payment deferral is completed, you will be considered current on your mortgage.
- For information on how your credit report may impact your credit score, go to: https://www.consumerfinance.gov/consumer-tools/credit-reports-and-scores/

## Additional Payment Deferral Information and Legal Notices

The following disclosures are provided in conjunction with Fair Debt Collection Practices Act and other laws and regulations that protect our members:

**Notice of Error** - To provide us with a Notice of Error about the servicing of your mortgage, or make a request for information, please write us at: myCUmortgage, LLC, P.O. Box 341344, Beavercreek, OH 45434 – 1344. If a Notice of Error is submitted by another person acting on your behalf (an 'agent'), you must provide documentation of your permission for that 'agent' to act on your behalf. Upon receipt of your written permission, myCUmortgage will consider the Notice of Error as having been submitted by you directly.

**Debt Collection** – myCUmortgage is servicing your loan and is considered a debt collector. This document is an attempt to collect a debt and any information obtained will be used for that purpose.

**Bankruptcy Status** – If you have filed a bankruptcy you are entitled to certain protections under federal law, including the automatic stay. myCUmortgage is committed to respecting your rights, and requests that you provide us with the name and phone number of your attorney, the district court where your case is filed, and your bankruptcy case number. We will then reach out to your attorney to discuss your loan.

myCUmortgage cannot, and will not, attempt to collect a debt from any individual protected by the U.S. Bankruptcy Code. Any action taken by myCUmortgage is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally.

NOTE: THIS IS NOT A BILL. IF YOUR OBLIGATION HAS BEEN DISCHARGED IN BANKRUPTCY, IS SUBJECT TO THE AUTOMATIC STAY OR IS PROVIDED FOR IN A CONFIRMED PLAN, THIS COMMUNICATION IS FOR REGULATORY COMPLIANCE AND/OR INFORMATIONAL PURPOSES ONLY, AND DOES NOT CONSTITUTE AN ATTEMPT TO COLLECT A DEBT OR TO IMPOSE PERSONAL LIABILITY FOR SUCH OBLIGATION. IF YOUR CONFIRMED PLAN REQUIRES YOU TO MAKE POST-PETITION MORTGAGE PAYMENTS DIRECTLY TO THE TRUSTEE, ANY SUCH PAYMENTS SHOULD BE REMITTED TO THE TRUSTEE DIRECTLY, IN ACCORDANCE WITH THE ORDERS OF THE BANKRUPTCY COURT.

5



3560 Pentagon Blvd, Suite 301
Beavercreek, OH 45431

**Credit Reporting** - myCUmortgage may report your mortgage account to credit bureaus. Late or missed payments and other defaults on your account may reflect on your credit report which can impact your ability to obtain other forms of credit.

**Financial Counseling Resources** - When you are experiencing a financial hardship, housing counseling may be a way to help you manage your finances. We urge you to contact HUD-approved agencies to obtain assistance in keeping your home, or specific guidance on this notice or for general information related to mortgage assistance. Housing counseling is available at no charge.
- HUD Approved Housing Counseling: 1-800-569-4287 or https://www.hudexchange.info/programs/housing-counseling/
- Homeowner's HOPE Hotline Number: 1888-995-4673 or www.hopenow.com
- Making Home Affordable Program: www.makinghomeaffordable.gov
- Fannie Mae Assistance Program: www.knowyouroptions.com

**Servicemembers Civil Relief Act** - Servicemembers on "active duty", "active service" or who have received a Permanent Change of Station order, (or a spouse or dependent of such a servicemember), may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA). In order to request relief under the SCRA, a servicemember or spouse, or both, must provide a written request to myCUmortgage, together with a copy of servicemember's military orders. For more information, please contact myCUmortgage at 877-912-8006 or you may send your request to myCUmortgage, PO Box 341344, Beavercreek, OH 45434.

"Military OneSource" is the U. S. Department of Defense's information resource. For more information, please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the Unites States). Dialing instructions for areas outside the United States are provided on the website.